WISCONSIN METAL PRODUCTS COMPANY, Appellant, vs.
RUSK MANUFACTURING COMPANY, Respondent.

*April 11—May 9, 1922.*

*Sales: Signed but undelivered contract: Acceptance of offer:
Breach: Venue.*

1. Where defendant submitted to plaintiff a contract for curry-
   comb handles to be manufactured by defendant, and plaintiff
   signed the contract but failed to return it to the defendant,
   such contract created no contractual relation between the
   parties, the reason for the failure to return being immaterial.
2. A statement in a letter of plaintiff to defendant: "We really
   consider that we are tied up with you for the coming year
   and will see that one of the contracts is signed and returned
   to you," is construed not to be an acceptance of defendant's
   proposition set forth in the proposed contract.
3. The acceptance of an offer to be effectual must be identical
   with the offer and be unconditional.
4. Where the contract submitted was for 600,000 handles, a letter
   of the plaintiff stating that it wanted 100,000 handles quickly
   was not an acceptance of the offer, and defendant was not
   liable in damages for failure to deliver more than the 100,000.
5. Where the order was accepted in Rusk county where the de-
   fendant corporation was located, and the goods were to be
   delivered f. o. b. cars, and the breach occurred in that county,
   no part of a cause of action for the breach of the contract by
   the seller arose in Racine county, where the plaintiff corpora-
   tion was located, and the place of trial was properly changed
   to Rusk county.

APPEAL from a judgment of the circuit court for Rusk
county: JAMES WICKHAM, Circuit Judge. *Affirmed.*

Breach of contract. Plaintiff is a corporation engaged in
the manufacture of currycombs at Racine. Defendant is
a manufacturing corporation located at Hawkins, Wiscon-
sin. On the 17th day of August, 1917, defendant wrote
plaintiff stating that it had just finished erecting a wood-
turning plant with baking ovens and would turn out all
kinds of wood novelties, and solicited its business. Further
correspondence culminated in an order from the plaintiff for
100,000 small currycomb handles. In the letter transmit-
ting the order plaintiff suggested that it used about 600,000

of these handles a year.   Under date of September 5th de-
fendant expressed a desire to supply plaintiff's needs for
the year 1918. · To this plaintiff replied that it seemed too
far ahead to buy handles now, as it generally placed its
order in February for shipment commencing in June and
extending for the balance of the year, and said: "If we
were to give you an order now, we would not want ship-
ments to commence until about June 30, 1918; and you could
then ship at the rate of 100,000 per month for six months."
It also stated that the major portion of its handles were a
little larger than the 100,000 ordered.   Under date of Sep-
tember 8th the defendant offered to furnish the larger han-
dles at $6.65 per thousand f. o. b. Hawkins, Wisconsin.   In
reply plaintiff expressed some doubt as to the ability of the
defendant to supply the quantity of handles and suggested
that "we had better see how you take care of the order you
now have."   In the course of the letter, however, it was
suggested that "in the meantime you might draw up a con-
tract for our requirements in currycomb handles up to
600,000 at the prices you have mentioned."

Under date of September 15th defendant replied supply-
ing information relative to its ability to take care of such an
order and concluded by saying:

"We shall draw up a contract some time next week and
send it to you for signature when you are satisfied that we
can do the work, but this must not be too long after the first
shipment is sent you."

Between this date and October 20th the correspondence
between the parties consisted only of letters written by the
plaintiff inquiring when a shipment of small currycomb han-
dles might be expected and complaining somewhat of the
delay in making shipment.

On October 20th defendant wrote plaintiff explaining the
delay in shipment and in closing said:

"Relative to the large handles, wish to say that the writer
has been sick for the last three weeks and therefore this

matter was delayed.   You can send us your regular contract order for these and we will then acknowledge it, which will constitute a contract between us."

In its reply on October 22d plaintiff said:

"Wish you would draw up a contract as outlined in our previous letter.   We have tried to explain to you our position, and if you will draw up some sort of a contract along the line we mentioned and sign it and send it to us, we will be glad to sign a copy and return it to you."

On October 24th defendant forwarded such a contract to the plaintiff.   On November 10th plaintiff wrote defendant inquiring what progress was being made on the small currycomb handles.   On November 22d a similar inquiry was made.   On November 27th plaintiff wrote:

"We note we have had no reply to our recent letter with reference to our order for currycomb handles.   It is surely bad enough for you to fall down so badly on deliveries to say nothing of ignoring our letters.   We have gotten to a point now where we simply must have handles without delay, and will ask that you advise us just what we can expect."

On November 28th defendant replied, saying: "Will ship some of the handles the first of next week."   On November 31st plaintiff acknowledged receipt of this letter and said:

"As you know, gentlemen, we have sort of placed ourselves in your hands for the coming season, and our orders will have to have a whole lot better attention than this first one did.   If some member of your firm expects to be in Milwaukee soon, we would like very much indeed to have him come down and see us as we think that this would be to our mutual advantage.   As you know, we are somewhat frank with you in stating that when we place our order for currycomb handles we have simply got to expect shipments as ordered.   If we do not get them it practically ties our entire factory up.   The handle contract is a very important one and we would like to meet some member of your firm and talk this matter over."

And again on December 7th the plaintiff wrote:

"We would be glad if you could arrange to come and see us some day next week.   As we advised you in our previous letter, we have cast our lot with you for the next year, and from the way our present order has been handled think we have reasons to be somewhat skeptical as to your ability to furnish the handles ordered.   We are sure that if you will come down here and talk the matter over and see just what kind of a situation we would be in if we were held up for handles, you will redouble your efforts to see that we are taken care of."

On December 8th defendant replied expressing regret that it would be impossible for the writer to go to Racine and explained in detail the reason for the delay in getting out the handles.   In this letter it is stated: "We made you a small shipment this week and more will follow and that as quick as we possibly can get the stuff through the mill."   It was further stated: "I have put in a special machine to make these handles and similar stock now, but we do not have the contract for the larger handles."   Under date of December 12th plaintiff replied to this letter, saying:

"We have your favor of the 8th inst., and it was not our intentions to pry into your business affairs, but as stated in our previous letter you fell down so completely on this order that we were beginning to get worried about our next season's supply, as we figured that we had contracted with you for our next season's supply of large handles as well as small.   The reason we wanted you to come down was to talk matters over in regard to next season's business.   We note your next to the last paragraph in which you state that you have put in a special machine to make these handles but that you do not have the contract for large handles.   We do not quite understand what you mean by this, as we consider the matter of large handles placed with you for the coming season and would like to have you explain to us just what you mean."

Under date of December 14th defendant replied, saying: "We sent you a contract in duplicate some time ago and you

did not sign and return one copy.  This was for the large handle and is why we wrote as we did.  Your letter is now considered as a contract by us closing the matter."

Under date of December 22d plaintiff wrote acknowledging receipt of the first shipment of handles, making complaint concerning the finish of the handles, and concluding in these words:

"Regarding the contract you sent us, these are still on the writer's desk and the only reason they have not been returned was because we wanted to see just what kind of goods you were going to turn out.  As we have written you previously, we really consider that we are tied up with you for the coming year, and will see that one of the contracts is signed and returned to you."

Then follows a letter from the defendant acknowledging receipt of the letter of the 22d, advising of a further shipment, acknowledging that some of the handles may be a little rough, but giving assurance that "we will watch this on the next shipment and will also bake the enamel longer." To this letter plaintiff replied, trusting that defendant will be able to overcome its troubles, and stating: "As soon as you have completed this order you have, we want you to get busy at once on the larger handles as we will be going to need some of these before June."  To this letter defendant replied: "We have not figured on furnishing the large handle so soon but will arrange to begin shipments as soon as possible."

Under date of January 3d plaintiff wrote asking for information as to "about when you can at least commence deliveries of large handles."  On January 4th defendant replied: "When these small handles are out we can begin on the large ones and certainly this ought to be by February 1st."  Under date of January 9th plaintiff wrote impressing upon the defendant its necessities in connection with a government contract for currycombs, stating: "We have a large contract with them [government] which positively must be

completed inside of ninety days, and must depend on you for at least 1,000 handles quickly." (It is assumed that 100,000 handles instead of 1,000 handles was meant.) "If necessary you can let the small handles go. This first order of 100,000 big handles is to be with the large-size boring." The letter also contained directions to ship the handles in cases instead of boxes.

February 8th defendant advised plaintiff that "the ferrules for the large handles have arrived which we are now working on." February 13th plaintiff replied, noting that they were working on the large handles, and stating: "Please keep these coming to us as fast as possible." In this letter plaintiff refers to the method of settlement, stating that it was their custom that "when there are several shipments in a month we make it a practice of paying each month for the merchandise received the preceding month. We hope this method will be satisfactory to you." Defendant never made reply to this suggestion. On February 28th plaintiff again wrote defendant, noting that they were commencing shipment of large currycomb handles, expressing hope that they can get off at least 100,000 handles during the month of March. Complaint was made that the handles were being shipped in sacks instead of boxes.

On March 4th plaintiff wrote urging that they get in stock for 100,000 more handles, as "we have just last week received another order from the quartermaster's department for currycombs and now have orders on hand for over 200,000 combs. We therefore hope that you will be able to see the importance of keeping us well supplied with handles, and inasmuch as we are working on a penalty contract look out that we do not get caught."

On April 3d plaintiff wrote: "Please try and keep the handles coming to us a little faster, as we can see that at the rate they are coming that you are going to have us tied up completely inside of the next thirty days. Advise us what we can expect."

On April 15th defendant advised plaintiff that it could not furnish any more handles. In the further correspondence plaintiff insisted that it had a contract for 600,000 handles, while defendant maintained that no such contract had been entered into.

This action was brought by plaintiff to recover damages resulting from defendant's breach of the alleged contract for 600,000 currycomb handles. There was a trial by the court without a jury. The court found that there was a valid contract for only 100,000 large currycomb handles, of which defendant furnished 68,368; that plaintiff sustained a loss of $3.35 per thousand on the undelivered handles; and rendered judgment in favor of the plaintiff for $105.96. From this judgment plaintiff brings this appeal.

For the appellant there was a brief by *Simmons & Walker* of Racine, and oral argument by *M. E. Walker.*

*J. W. Carow* of Ladysmith, for the respondent.

OWEN, J. While the plaintiff claims that the contract prepared and submitted by the defendant for 600,000 handles was signed by the plaintiff, it is conceded that it was never returned to the defendant. It is claimed that the failure to return the same was due to an oversight on the part of a stenographer in plaintiff's office. Of course the reason for the failure to return the contract is not material. In view of the fact that it was not returned, the signing and execution thereof on the part of the plaintiff, if it was signed and executed, created no contractual relations between the parties. Whatever contract existed was created by the correspondence between them, which is set out in considerable detail in the statement of facts. The trial court held that the correspondence did not amount to an order for 600,000 handles, which finding we readily approve.

In the early part of the correspondence between the parties the plaintiff insists that the defendant shall prepare and submit a contract for the furnishing of the 600,000 han-

dles.  This the defendant did on October 24th.  In the further correspondence no reference is made to the form of contract so submitted.  Its receipt is not even acknowledged. For the next month, and longer, plaintiff's correspondence is of a prodding nature, urging defendant to make shipment on the order for small handles.  Not until November 31st did plaintiff say anything which would indicate to the defendant that plaintiff was even considering the ordering of any more handles.  In its letter of that date plaintiff said: "As you know, gentlemen, we have sort of placed ourselves in your hands for the coming season and our orders will have to have a whole lot better attention than this first one did;" and in its letter of December 7th, in which it asks for a personal interview, this expression is used: "As we advised you in our previous letter, we have cast our lot with you for the next year."  This is very general language, and does not even approach an acceptance of the proposition submitted by the defendant.

Upon the defendant's calling the attention of plaintiff to the fact that it did not have a contract for large handles, the plaintiff, in its letter of December 12th, expresses apparent surprise, saying that it did not understand what was meant by defendant's statement that it did not have the contract for the large handles, "as we consider the matter of large handles placed with you for the coming season and would like to have you explain to us just what you mean." Again this falls short of being an acceptance of defendant's proposition to supply the 600,000 handles.  That it was not so intended is indicated by plaintiff's reply to defendant's letter saying, "your letter is now considered as a contract by us closing the matter."  If plaintiff had said nothing in reply to this letter, its previous correspondence might be construed as an acceptance of defendant's proposition, but it is quite evident that the plaintiff did not want the correspondence so construed, because, on December 22d, plaintiff wrote the defendant as follows: "Regarding the con-

tract you sent us, these are still on the writer's desk, and the only reason they have not been returned was because we wanted to see just what kind of goods you were going to turn out. As we have written you previously, we really consider that we are tied up with you for the coming year, and will see that one of the contracts is signed and returned to you." Note the expression, "we really consider that we are tied up with you for the coming year." This is not a statement to the effect that "we consider that we have entered into a contract with you for our requirements for the coming year," or for "600,000 handles," and defendant is given distinctly to understand that the contract will in the future be signed and returned, for the plaintiff says that we "will see that one of the contracts is signed and returned to you."

Up to this time the nature and tone of the correspondence strongly suggests that plaintiff studiously avoided entering into a definite contract with the defendant for the 600,000 handles. The plaintiff had expressed a doubt concerning the ability of the defendant to supply it with its requirements; it had stated that it was not its custom to tie itself up with one manufacturer; that it did not generally enter into contracts for the year's supply until February; and the service rendered by the defendant upon the first 100,000 small handles was not satisfactory to the plaintiff, nor reassuring as to its ability to supply the larger contract. Much of the correspondence was expressive of plaintiff's impatience because of the delay in shipping under the order for small handles. When they did arrive they were not entirely satisfactory. They were not crated as desired, and plaintiff was not at all satisfied with the rate at which deliveries were being made.

Plaintiff's attitude is rather clearly revealed when in its letter of December 22d, receiving the first shipment of handles under its order of September 5th, it said: "will see that one of the contracts is signed and returned to you." It did

not want to abandon negotiations and yet it wanted to be in a position to say "we have entered into no contract with you." Furthermore, the letter of December 22d clearly indicates that up to that time plaintiff did not regard the contract as closed, as it says, referring to the contracts, "these are still on the writer's desk, and the only reason they have not been returned was because we wanted to see just what kind of goods you were going to turn out." Plainly they were holding the matter in abeyance and did not regard the contract as closed notwithstanding the intimations to the contrary in its letters of December 12th and 14th. If the contract was not closed on December 22d, defendant's proposition was not accepted at any time thereafter. The acceptance of an offer, to be effectual, must be identical with the offer and unconditional. *Hess v. Holt L. Co.* 175 Wis. 451, 185 N. W. 522.

The defendant had forwarded its offer on October 24th. An unconditional acceptance of that offer would have constituted a contract. This offer was never accepted by the plaintiff. Its letter of January 9th, in which it was stated they wanted 100,000 large handles quickly, was not an acceptance of defendant's offer. If it was anything, it was an order for 100,000 of the large handles, presumably at the price for which defendant had offered to furnish them. The trial court properly so held, and in awarding plaintiff the damages for the undelivered portion of this order plaintiff recovered all to which it is entitled.

This action was commenced in Racine county. Upon defendant's motion the place of trial was changed to Rusk county. Plaintiff claims this was error. As the contract upon which recovery is permitted grew out of the order given by plaintiff for 100,000 large currycomb handles, which order was accepted by defendant at Hawkins, and the handles were to be delivered f. o. b. cars at Hawkins, and the breach occurred at Hawkins, it follows that no part of the cause of action arose in Racine county, and the

place. of trial was properly changed to Rusk county. See *State ex rel. Webster Mfg. Co. v. Reid, post,* p. 612, 188 N. W. 67.

*By the Court.*—Judgment affirmed.