PICK FOUNDRY, INC., and another, Appellants, vs. GENERAL DOOR MANUFACTURING COMPANY, Respondent.

*October 6—November 5, 1952.*

312

For the appellants there were briefs by *O'Meara &
O'Meara* of West Bend, attorneys, and *Carl B. Rix* of
Milwaukee of counsel, and oral argument by *Mr. Stephen
O'Meara* and *Mr. Rix*.

For the respondent there was a brief by *Lines, Spooner &
Quarles* of Milwaukee, attorneys, and *George A. Hartman* of
Juneau, and *John L. Schlatterer* of Milwaukee of counsel,
and oral argument by *Mr. Charles S. Quarles* and *Mr. Schlatterer*.

CURRIE, J: The plaintiff lessors raise the following two issues on this appeal:

(1) That the lease executed by the parties under date of November 8, 1949, is void and of no effect because of failure to comply with the provisions of the statute of frauds (secs. 240.06 and 240.08, Stats.); and

(2) That it was error for the trial court to refuse to permit Robert Pick to testify as to conversations had with the deceased president of the defendant corporation, the plaintiffs claiming that such testimony would have explained inconsistent documentary evidence previously introduced by the defendant.

At the time the plaintiffs received the defendant's letter of November 8, 1949 (which returned plaintiffs' copy of the lease, explained the three alterations made therein, and inclosed the check of $700), the defendant was not indebted or under liability to the plaintiffs in any way. Inasmuch as the defendant did not enter into possession until after plaintiffs had received and cashed the check, there was then no implied obligation to pay rent. Therefore, the check was an unequivocal tender of one month's rent under the lease.

The act of plaintiffs in executing the lease and delivering the executed copies thereof to Franz, president of the defendant corporation, constituted an offer to lease the premises upon the terms set forth in the lease. The legal effect of the act of the defendant, in making three material alterations in the lease, was to reject plaintiffs' offer and to make a new counteroffer. Such counteroffer, however, was accepted by the plaintiffs' conduct in retaining and immediately cashing the $700 check.

In 31 C. J. S., Estoppel, p. 347, sec. 109, it is stated:

"Where one having the right to accept or reject a transaction takes and retains benefits thereunder, he ratifies the transaction, is bound by it, and cannot avoid its obligation or effect by taking a position inconsistent therewith."

This same principle was recognized by the original opinion of this court written by Mr. Justice WICKHEM in *Morris F. Fox & Co. v. Lisman* (1932), 208 Wis. 1, 237 N. W. 267, wherein it was stated (p. 13):

"Or, if the conduct of the offeree is such as to lead the offeror to believe that the offer has been accepted, there may be an acceptance by estoppel. 1 Page, Contracts, sec. 161."

This brings us to the crucial question of the case. It is the position of plaintiffs' counsel that inasmuch as the material constituting the three alterations was typed into the lease by the defendant after the lease had been signed and acknowledged by the officers of the plaintiff corporations, the provisions of secs. 240.06 and 240.08, Stats., requiring leases for a longer period than one year to be in writing subscribed by the lessor, were not complied with as to such added material. The alterations cannot be disregarded because they were material and without them being incorporated into the lease there would have been no meeting of the minds of the parties as to certain essential elements.

The briefs of counsel in this case do not cite any direct authorities on the issue here presented of whether the statute of frauds renders void a bilateral written agreement required to be in writing by the statute, in which one party has made alterations therein after the opposite party has signed the same, and where the party who first signed, thereafter, by conduct or words acquiesces in, or ratifies, such alterations, or accepts benefits under the altered agreement.

It would seem that the ends of justice would best be promoted by holding that where A, a party to a bilateral written agreement required by statute to be in writing, has knowledge that after A had signed the agreement B, the other party to the agreement, had made material changes therein before B also signed it, and with such full knowledge A thereafter accepts any benefits from B as performance under the altered agreement, A is thereby estopped from raising the

defense of the statute of frauds so as to claim that such alterations invalidated the agreement.

Invoking the doctrine of estoppel so as to prohibit a party from raising a defense based upon the statute of frauds, is, of course, not a novel legal concept. This court in *Knauf & Tesch Co. v. Elkhart Lake S. & G. Co.* (1913), 153 Wis. 306, 141 N. W. 701, held that the doctrine of estoppel *in pais* would be applied to effect a transfer of title to land in order to avoid fraud, even though the statute of frauds had not been complied with. The court, in its opinion in that case, stated (p. 316):

"It is suggested that the doctrine aforesaid is in violation of the statute of frauds when applied to real-estate titles. Not so, as uniformly held. The statute of frauds was not designed to enable the evil-disposed to possess an instrumentality with which to perpetrate fraud. It is the weapon of the written law to prevent fraud while the doctrine of estoppel is that of the unwritten law to prevent like evil. Each is effective in its appropriate field. Both are essential to prevent and redress wrongs."

In the instant case there is no evidence from which it can be inferred that the officers of plaintiff corporations acted at all from a corrupt motive or fraudulent intent. Apparently they believed in good faith that they could cash the $700 check tendered by defendant in the letter of November 8, 1949, and thereafter disavow the lease on the ground that the material alterations were made therein without their consent. However, actual fraudulent intent is not a necessary incident to the application of the principle of estoppel declared in *Knauf & Tesch Co. v. Elkhart Lake S. & G. Co., supra.*

49 Am. Jur., Statute of Frauds, p. 890, sec. 583, states:

"Actual intent or design to mislead or deceive is not, however, essential. There need not be a corrupt motive or evil design; it is sufficient if the circumstances are such as to

render it unconscionable to deny facts which the party by his silence or representation has caused the other party to believe in and act upon, and the denial of which must operate as a fraud upon him."

Plaintiffs' counsel, in support of their contention that the alterations in the lease rendered the lease void under the statute of frauds, cite our decision in *Wyman v. Utech* (1949), 256 Wis. 234, 40 N. W. (2d) 378, 42 N. W. (2d) 603. In that case a written option to purchase real estate was executed by the defendant owner to the two plaintiffs, being husband and wife, all three parties signing the same. Thereafter the plaintiff husband and the defendant made material alterations in the option without the knowledge or consent of the plaintiff wife. The court held the alterations were void as to the wife, and in the opinion on rehearing it was specifically pointed out that the plaintiff wife by her conduct did not cause the defendant to change the latter's position in reliance upon the option as so altered. In other words, there was no element of estoppel present, and this distinguishes that case from the instant one.

In the present case, not only did plaintiffs accept the benefits of the altered lease, in cashing the first rent check and in accepting subsequent rent payments, but the defendant acted to its prejudice in expending large sums of money in moving its machinery and stock of inventory to the leased premises and in installing the same therein. Such expenditures aggregated approximately $16,000. We deem that these expenditures by defendant in reliance upon the provisions of the three-year lease would, if standing alone, be sufficient to bar plaintiffs from raising the question of violation of the statute of frauds under the well-known doctrine of part performance.

Plaintiffs' counsel contend that such a large expenditure for moving and installation expense is not sufficient to invoke the doctrine of part performance, and cite the case of *Knoff*

*v. Grace* (1920), 68 Colo. 527, 190 Pac. 526, 10 A. L. R. 1492. In that case the Colorado court held that the payment of rent and the installation of trade fixtures were as consistent with a month-to-month tenancy as they were with a three-year tenancy under a verbal lease void by virtue of the statute of frauds, and therefore the alleged part performance was insufficient to prevent the operation of the statute. In the instant case we do not consider that the expenditure of $16,000 by the defendant for moving and installation expense, being almost the equivalent of two years' rent, is as consistent with the existence of a month-to-month tenancy as it would be with a tenancy for three years, because it would be highly improbable that a lessee would incur such an expense to occupy the premises if it knew that it could be ejected upon one month's notice at the will of the lessors.

The case of *Forrester v. Reliable Transfer Co.* (1910), 59 Wash. 86, 109 Pac. 312, involved a five-year written lease providing a rental of $180 per month, which lease was not acknowledged by the lessor so as to comply with the Washington statute of frauds. In reliance on the lease, however, the lessor advanced sums aggregating approximately $750 to be expended by the lessee in making alterations and repairs to the leased building as the lessee might desire. Such alterations and repairs added nothing to the value of the building but were solely of value to the lessee. The Washington court held that the plaintiff lessor was entitled to have the lease adjudged valid. It will be noted that the expenditure of $750 relied upon as part performance bore a much smaller ratio to annual rental than did the sums incurred by the defendant for moving and installation costs in the instant case.

Counsel for plaintiffs advance the argument, that the expenditure by the defendant for moving and installation expense does not constitute such part performance as to render unavailable to plaintiffs the right to rely upon the statute

of frauds as establishing the invalidity of the lease, because "the defendant was not required [under the lease] to perform any act other than that of paying rent." However, it is not essential that the acts relied upon as constituting part performance be rendered pursuant to the terms of the parol agreement in order to be effective to deprive the opposite party of the benefit of the statute of frauds. 49 Am. Jur., Statute of Frauds, p. 737, sec. 430, states:

"According to the prevailing opinion, the doctrine of part performance applies with equal force to acts done on the faith of the oral agreement and to those in performance of its terms and conditions. In this respect, the choice of the term 'part performance' for this equitable doctrine which permits a court of equity to decree specific performance of an oral contract is not a happy one. Such term is not descriptive of the rule, and is sometimes really confusing. Many of the strongest cases, and those most frequently arising for the interposition of equity under the doctrine in question, do not involve any part performance at all, properly speaking. The plaintiff must show that in reliance on the contract, he has proceeded, either in performance or pursuance of it, so far to alter his position as to incur an unjust and unconscientious injury and loss in case the defendant is permitted to rely upon the statutory defense. But this change of situation is not confined to doing what the contract stipulated; that is, 'part performance,' strictly so-called."

This court in *Wall v. Minneapolis, St. P. & S. S. M. R. Co.* (1893), 86 Wis. 48, 58, 56 N. W. 367, held that acts relied upon to constitute part performance of an option for sale of lands verbally modified, so as to entitle the purchaser to specific performance, did not have to be acts stipulated in the contract so long as they were done in reliance upon it.

The doctrine of part performance is grounded upon the principle of estoppel. A discussion of the fundamental theory underlying the doctrine is set forth in 49 Am. Jur., Statute of Frauds, p. 727, sec. 422, as follows:

"The doctrine of part performance operates not upon the theory that the part performance is a substitute for the written evidence required by the statute of frauds, but on the theory that the defendant may be estopped in view of the part performance to assert the statute as a defense. Part performance takes the case out of the statute not because it furnishes proof of the contract, or because it makes the contract any stronger, but because it would be intolerable in equity for the owner of a tract of land knowingly to suffer another to invest time, labor, and money in that land, upon the faith of a contract which did not exist. As hereinbefore observed, the doctrine is based on the prevention of fraud. It operates to accomplish that purpose on the theory of an estoppel, particularly an estoppel by conduct, to assert the statute, and not upon any notion that the court has the power to dispense with the statute, that it is not as obligatory in equity as at law, that the statute is invalid or should not be strictly adhered to, or that the oral contract may be enforced as such in spite of the statute."

As mentioned at the beginning of this opinion, it is contended that it was error for the trial court to sustain the objection to the competency of Robert Pick, secretary of the plaintiff corporations, to testify concerning conversations had between him and Franz, deceased president of the defendant, which took place in November and December, 1949. Sec. 325.16, Stats., provides as follows:

"No party or person in his own behalf or interest, and no person from, through, or under whom a party derives his interest or title, shall be examined as a witness in respect to *any transaction or communication by him personally* with a deceased or insane person in any civil action or proceeding, in which the opposite party derives his title or sustains his liability to the cause of action from, through, or under such deceased or insane person, or in any action or proceeding in which such insane person is a party prosecuting or defending by guardian, unless such opposite party shall first, in his own behalf, introduce testimony of himself or some other person concerning *such transaction or communication,*

and then only in respect *to such transaction or communication* of which testimony is so given or in respect to matters to which such testimony relates. *And no* stockholder, *officer,* or trustee *of a corporation in its behalf or interest, and no* stockholder, *officer,* or trustee *of a corporation from, through,* or *under whom a party derives his or its interest or title, shall be so examined, except as aforesaid."* (Emphasis supplied.)

The foregoing statute was directly applicable, as the witness, Robert Pick, was an officer of the plaintiffs, and up until the death of Franz the defendant acted solely through Franz in establishing whatever interest or title it acquired in and to the leased premises. However, the statute recognizes that the door may be opened by the opposite party so as to make the witness competent to testify as to a transaction or communication with the deceased. Plaintiffs' counsel maintains that the door was so opened by defendant introducing in evidence a letter written by Franz to Carl Pick, dated February 1, 1950, and that Robert Pick's testimony as to his conversations with Franz would have explained such letter. However, we interpret the words *"by him personally"* appearing in the statute immediately following the words *"transaction or communication"* to qualify such latter words wherever they thereafter appear in the statute. The letter from Franz to Carl Pick not being a transaction or communication in which the witness Robert Pick personally participated, the offering of such letter did not open the door so as to make the witness competent to testify as to any conversation he had with Franz.

Furthermore, after the objection was sustained to the competency of the witness, Robert Pick, to testify as to conversations with Franz, there was no showing by offer of proof as to what Robert Pick would have testified. Therefore, this court can only speculate whether such testimony would have been material or relevant. 6 Jones, Commentaries on Evidence (2d ed.), p. 4998, sec. 2526, states:

"When an objection to evidence is sustained and evidence is rejected, if prejudice to the party seeking to introduce the evidence is not self-apparent, in order to save the point on appeal it is necessary for such party to make his record by making an offer of proof of those matters of the proof of which he has been deprived by the ruling of the trial court."

*By the Court.*—Judgment affirmed.