Phillips Petroleum Company, Respondent, vs. Taggart, Appellant.*

*November 7—December 6, 1955.*

---

* Motion for rehearing denied, with $25 costs, on February 7, 1956.

For the appellant there were briefs by *Crosby & Esch* of La Crosse, attorneys, and *Spohn, Ross, Stevens, Lamb & Pick* of Madison of counsel, and oral argument by *William H. Spohn.*

For the respondent there was a brief by *Hale, Skemp, Nietsch, Hanson & Schnurrer* of La Crosse, and oral argument by *Quincy H. Hale.*

STEINLE, J.   There are no substantial issues of fact under the pleadings and the affidavits presented in connection with the motions for summary judgment.

The entry of summary judgment is proper where the issues presented on the motion for such judgment are legal rather

than factual. *Des Jardin v. Greenfield* (1952), 262 Wis. 43, 50, 53 N. W. (2d) 784.

It is the appellant's contention that the trial court erred in granting the plaintiff's motion for summary judgment and in denying the defendant's application for such judgment. Appellant's position is based principally on grounds that there was no contract between the parties sufficient to satisfy the statute of frauds, and that the defendant is not estopped from asserting the nonexistence of a binding agreement.

The respondent company maintains that the pleadings and affidavits irrefutably indicate the existence of a binding written contract between the parties, and that summary judgment directing specific performance of the option to convey the land, was proper.

It is undisputed that the written lease in question was signed by Mr. Taggart in triplicate on June 26, 1951, at which time he also signed in triplicate a short-form condensation of the lease. The six signed documents were sent on Taggart's behalf to the Minneapolis office of the company from where they were forwarded to the company's home office in Oklahoma, and at which latter place they were signed by company officers on July 17, 1951. Neither Taggart nor his attorney received a copy of the lease from the company after the company officers had signed it. The short form of the lease was recorded in the office of the register of deeds of La Crosse county on August 15, 1951. Although the company did not advise Taggart of the recording of the lease, he learned of the recording subsequently. For two and one-half years after the commencement of the term of the lease Taggart accepted rentals from the company monthly at the rate specified in the written lease, the amount of which was greater than that provided in the earlier written lease.

Harry Taggart maintains that the transmittal to the company of the forms of lease signed by him constituted only

an offer to lease on the terms and conditions therein stated; that the offer could not ripen into contract until accepted by the company and until notice of such acceptance was communicated to him; that to satisfy the statute of frauds, acceptance was required to be in writing; that no notice of acceptance in writing was given to him.

With respect to his contention that he is not estopped from asserting the nonexistence of a binding agreement, Taggart maintains that only a valid oral lease for periodic tenancy existed; that the possession of the premises by the company and the acceptance of rent by him is consistent with the terms of the oral lease, and may not be regarded as sufficient part performance of a written lease so as to justify a decree of specific performance; and that being entitled to the rents under the oral contract, there can be neither estoppel *in pais* or quasi estoppel.

That the parties had not intended an oral lease is clear from their acts in causing their agreements arrived at in Minneapolis shortly before July 1, 1951, to be then and there reduced to writing; and when Mr. Taggart took with him to La Crosse for the scrutiny of his attorney, the forms (copies of the written lease) which had been prepared, and which he subsequently signed and caused to be forwarded to the company. Paragraph 18 of the written lease specifically provides:

"This instrument incorporates all of the obligations of the parties hereunder and there are no oral agreements or understandings between the parties concerning the property covered by this lease agreement."

The crucial question presented is whether the written lease is void for failure of the lessee to have communicated to the lessor its acceptance of the written lease.

Taggart's signing of the lease and the delivery of the signed copies to the company constituted an offer to lease the prem-

ises upon the terms and conditions stated. Acceptance was essential before the offered lease could become binding. Taggart does not deny that the lease was signed by the company. Such signing constituted an acceptance. Taggart maintains, however, that since the acceptance was not communicated to him, the written lease never became operative. He argues that the portions of the lease within the purview of the statute of frauds are void because of the failure of the company to have advised him of the acceptance. His position is that since he received no knowledge from the company of its acceptance until July 22, 1954, he cannot be charged with knowledge of it. He urges that since the written lease never became effective, the company held possession under an arrangement not set down in written form, in other words under an oral lease, and that although the option to purchase was within the statute of frauds and not enforceable, nevertheless it did not affect the valid covenants of occupancy and rent paying. In support of his position Taggart relies principally on *Helmholz v. Greene* (1921), 173 Wis. 306, 181 N. W. 221, and *Wisconsin M. P. Co. v. Rusk Mfg. Co.* (1922), 177 Wis. 155, 189 N. W. 138, in both of which cases it was ruled that one may not sign a memorandum of acceptance, hold it in his possession, and at his option treat it as the closing of a contract, or not do so. However, it is also the rule that where the offer of a landlord is neither accepted nor declined in terms, but the tenant proceeds to occupy and use the premises, such action on the part of the tenant will be construed as an acceptance of the terms of the lease previously offered. 51 C. J. S., Landlord and Tenant, p. 812, sec. 208 b.

In *Pick Foundry, Inc., v. General Door Mfg. Co.* (1952), 262 Wis. 311, 55 N. W. (2d) 407, the lessor forwarded copies of the written lease to the lessee who made material alteration therein and returned them to the lessor. The court

determined that such action constituted a rejection by the lessee of the lessor's offer and that such action resulted in a counteroffer, and that the conduct of the lessor in retaining and immediately cashing a check for $700 which was inclosed with the counteroffer was an unequivocal tender of the first month's rent under the lease, and was an acceptance of the counteroffer. In its opinion the court in that case quoted with approval from 31 C. J. S., Estoppel, p. 347, sec. 109:

"Where one having the right to accept or reject a transaction takes and retains benefits thereunder, he ratifies the transaction, is bound by it, and cannot avoid its obligation or effect by taking a position inconsistent therewith."

In *M. Samuels & Co. v. Zorbas* (1931), 182 Minn. 345, 234 N. W. 468, it was held that an acceptance of a counteroffer in a lease need not be made by express condition, nor is it presumed, but that it may be implied in fact from circumstances. There too, a change had been made in the counteroffer which the court held to be binding in view of the retention of possession of the premises.

There may be acceptance by estoppel. In *Morris F. Fox & Co. v. Lisman* (1932), 208 Wis. 1, 13, 237 N. W. 267, 240 N. W. 809, 242 N. W. 679, it was said:

". . . if the conduct of the offeree is such as to lead the offeror to believe that the offer has been accepted, there may be an acceptance by estoppel. 1 Page, Contracts, sec. 161."

One cannot accept the benefits of a contract over a long period of time and then successfully contend that the contract is not binding. The following rules are applicable:

"One of the most familiar applications of the rule relating to the acceptance of benefits arises in the case of contracts. It has been repeatedly held that a person by the acceptance of benefits may be estopped from questioning the existence, validity, and effect of a contract. This rule has been applied

where the objection was made . . .; that the contract was not delivered." 21 C. J., Estoppel, p. 1209, sec. 211.

"But 'the doctrine of equitable estoppel is frequently applied to transactions in which it is found that it would be unconscionable to permit a person to maintain a position inconsistent with one in which he has acquiesced or of which he has accepted any benefit.' " *Baierl v. Riesenecker* (1930), 201 Wis. 454, 461, 227 N. W. 9, 230 N. W. 605.

"As a general rule, by accepting benefits a person may be estopped from questioning the existence, validity, and effect of a contract. A party will not be allowed to assume the inconsistent position of affirming a contract in part by accepting or claiming its benefits, and disaffirming it in part by repudiating or avoiding its obligations, or burdens." 31 C. J. S., Estoppel, p. 350, sec. 110.

. "Generally speaking, a party will not be permitted to occupy inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him, at least where he had, or was chargeable with, full knowledge of the facts and another will be prejudiced by his action." 19 Am. Jur., Estoppel, p. 650, sec. 50.

Under the circumstances here it appears that Mr. Taggart knew or ought to have known that the company accepted his offer when, for two and one-half years after the commencement of the lease, the company remained in possession of the premises and forwarded monthly rental remittances to him at the rate specified in the new lease (in amount which represented an increase over the monthly rentals of the prior written lease) and which rental remittances he retained. By this conduct there was sufficient communication to Taggart of the company's acceptance of the written lease. He was estopped from asserting that said lease in its entirety was not binding upon him.

It is proper for a court to apply the doctrine of equitable estoppel on a motion for summary judgment. In *Virkshus*

*v. Virkshus* (1947), 250 Wis. 90, 96, 26 N. W. (2d) 156, where judgment of foreclosure of a mortgage was entered on a motion for summary judgment, the court said:

"Dominic was estopped from asserting rights against the mortgagee under this deed because his rights under it were expressly made subject to the mortgage, and he was estopped from asserting rights in the face of the deed to Rozalia because that deed as above shown was executed in fraud of his creditors."

The appellant challenged the validity of the respondent's affidavits presented in connection with its motion for summary judgment. It is contended that the affidavits do not appear to have been based on personal knowledge of the facts as required by sec. 270.635 (2), Stats. The affidavit of M. I. Lynne appears to be based on personal knowledge of the facts contained therein. The affidavit of Attorney Hale is based on personal knowledge derived from the written instruments referred to, the admissions in the answer, and the admissions of persons at their adverse examinations. The material portions of Attorney Hale's affidavit are not controverted, but in fact are substantiated by statements in the affidavits presented on behalf of appellant.

In *Commerce Ins. Co. v. Merrill Gas Co.* (1955), ante, p. 159, 72 N. W. (2d) 771, it was indicated that an attorney's affidavit based on knowledge of statements adduced at an adverse examination was proper in connection with a motion for summary judgment. In the instant situation the knowledge by Attorney Hale of matters set forth in his affidavit and based on statements of witnesses at adverse examinations, admissions contained in the answer, and content of instruments of record, was sufficient to satisfy the requirements of personal knowledge as provided in sec. 270.635 (2), Stats. Appellant's contention in this regard cannot be sustained.

Appellant also contends that the failure of the respondent to have paid the increase of taxes for the three years of the written lease bars this action for specific performance. The written lease provides that there shall be no forfeiture of it for nonpayment of rent or part thereof unless the lessor shall have notified the lessee of the default, and payment shall not have been made within twenty days after such notice. The payment of the increase in taxes was a part of the rental. The provision for payment of the increased taxes was inserted in the written lease at the instance of Taggart. At the time referred to in his affidavit, when he inquired about the payment for such increase and was advised that no such obligation existed, he was charged with knowledge of the existence of the provision in the lease relating to payment of increased taxes. At no time before this litigation was commenced did Taggart advise the lessee in writing of any claimed default with respect to the payment of taxes. When the respondent company was informed of the default after the commencement of the action, an offer was made on its behalf to remit an amount equal to the tax increase, which the appellant refused to accept. The claim of a breach of the lease under these circumstances manifestly has no merit.

There were no substantial issues of fact in the cause. The issues of law were correctly determined.

*By the Court.*—Judgment affirmed.