ZASTROW and another, Appellants, v. VILLAGE OF BROWN DEER, Respondent.

*December 2, 1959—January 5, 1960.*

102

For the appellants there was a brief by *Demet & Demet* of Milwaukee, and oral argument by *Francis J. Demet* and *Margaret Moffatt Demet.*

For the respondent there was a brief by *Harold H. Fuhrman,* village attorney, attorney, and *Wickert & Fuhrman* of Milwaukee of counsel, and oral argument by *Harold H. Fuhrman* and by *John Ellegard* of Milwaukee.

DIETERICH, J.    The affidavits in support of the defendant's motion for summary judgment state additional pertinent facts.    Schneeberg's affidavit dated April 29, 1959, states that pursuant to the authority granted by the public service commission, the village has established a municipal water system consisting of facilities in 13 subdivisions named, of which the facilities in each have been interconnected, excepting only Bradley Estates No. 2, Green Knoll and County Line Estates, which it intends to interconnect with the municipal water system.    The affidavit of Schneeberg dated May 12, 1959, states that the village does not contemplate interconnection of the water system of Bradley Estates No. 2 with those units of the municipal water system lying within Rosedale No. 1, and Rosedale No. 2, but does contemplate interconnection of the Bradley Estates No. 2, with that unit of municipal water system lying within Coronado subdivision, that there is no free flowage of water between the water facilities of Coronado and those of Rosedale No. 1 and Rosedale No. 2, and that plaintiff Zastrow acquired his interest in real estate in Bradley Estates

No. 2 subsequent to the recording of documents Nos. 3502232 (declaration of water trust) and 3502231 (agreement). Schneeberg's affidavit dated May 22, 1959, states that the establishing of a municipal water system by the village of Brown Deer terminated the water trust of Bradley Estates No. 2.

Mr. Giffen, a member of the water committee of the village, testified that the village contemplates interconnecting Bradley Estates No. 2 water trust with the municipal water system. The bids for doing the latter were to be opened on May 15, 1959.

Opposing the motion for summary judgment are the affidavits of plaintiffs Zastrow and Boles. Each of them contains numerous denials and conclusions of law, but states no substantial facts to controvert the pleadings and the affidavits of the defendant.

Upon a motion for summary judgment the court must determine whether or not the pleadings and supporting affidavits reveal that there is any substantial issue of fact, which entitles the plaintiffs to a determination thereof by a jury or the court. *Parish v. Awschu Properties, Inc.* (1945), 247 Wis. 166, 19 N. W. (2d) 276; *Prime Mfg. Co. v. A. F. Gallun & Sons Corp.* (1938), 229 Wis. 348, 281 N. W. 697. Upon such motions, evidentiary facts stated are to be considered, but not conclusions of law. *Schau v. Morgan* (1942), 241 Wis. 334, 6 N. W. (2d) 212. Disputed issues of fact which are immaterial to the controlling issues of law presented by undisputed facts do not form a basis for denying the application. A summary judgment should be granted when it is clear that a formal trial could serve no useful purpose and could only result in a judgment as a matter of law. *Hafemann v. Korinek* (1954), 266 Wis. 450, 63 N. W. (2d) 835; *Phillips Petroleum Co. v. Taggart* (1955), 271 Wis. 261, 73 N. W. (2d) 482.

The sole issue in this case is whether the covenants contained in the trust agreement and to which the lands owned by plaintiffs are subject are binding and preclude the appellants as a matter of law from maintaining their action.

The undisputed facts are the agreement and declaration of trust, the covenants therein, the platting of the lands subject thereto, the subsequent acquisition of ownership of the lands by the plaintiffs, and the village having become the owner and operator of a municipal water system pursuant to the orders and certificates of authority of the public service commission.

Sec. 236.01, Stats. 1955, provides:

"PURPOSE OF CHAPTER. . . . to regulate the subdivision of land to promote public health, safety, and general welfare; . . . to facilitate adequate provision for water, sewerage, and other public requirements; . . ."

Sec. 236.13 (2), Stats. 1955, provides:

"As a further condition of approval, the governing body of the town or municipality within which the subdivision lies may require that the subdivider make and install any public improvements reasonably necessary or that he execute a surety bond to insure that he will make those improvements within a reasonable time."

Sec. 66.60 (3), Stats. 1955, provides:

"Any city or village may require as a condition for accepting the dedication of public streets, alleys, or other ways, or for permitting private streets, alleys, or other public ways to be placed on the official map, that designated facilities shall have been previously provided without cost to the municipality, but which are constructed according to municipal specifications and under municipal inspection, such as, without limitation because of enumeration, sewerage, water mains, and laterals, grading and improvement of streets, alleys, sidewalks, and other public ways, street lighting, or other facilities designated by the governing body, or that a

specified portion of such costs shall be paid in advance as provided in sec. 66.54 (3), statutes of 1943."

In *Kennedy v. Barnish* (1943), 244 Wis. 137, 141, 11 N. W. (2d) 682, it is stated:

" 'Dedication is defined to be the act of giving or devoting property to some proper object, *in such a way as to conclude the owner.'  Connehan v. Ford, 9* Wis. *240, *244."

In *Knox v. Roehl* (1913), 153 Wis. 239, 243, 140 N. W. 1121, it was said:

"The essential requisites of a valid common-law dedication are that there must be an intent to dedicate on the part of the owner and an acceptance of the dedication by the proper public authorities or by general public user."

The village could require as a condition of its approval of a plat that the subdivider make and install any public improvements reasonably necessary, including a water system, and it could require as a condition for accepting the dedication that the designated facilities previously constructed and provided be without cost to the village, and that such facilities be according to the village's specifications and under its inspection, including water mains and laterals.

Pertinent parts of the agreement between Ash Realty Corporation and the village of Brown Deer are:

"Agreement.

"This agreement made this 16th day of April, 1956, by and between Ash Realty Corporation, as nominee for 20 corporations, party of the first part, and the village of Brown Deer, a municipal corporation, Milwaukee county, Wisconsin, party of the second part, . . .

"Now, therefore, in consideration of the approval of said plat by the village of Brown Deer, acting by and through its village board, the undersigned, party of the first part, hereby agrees and undertakes to: . . .

"2. Install sanitary sewer throughout the entire subdivision in accordance with village specifications before any lot therein is sold in accordance with ordinance.

"3. Install adequate water facilities, including water mains with house-service connections to lotline all meeting the specifications of the village of Brown Deer as to water mains, community wells, hydrants, and connection with any water system or any other source of water, as required by ordinance. . . .

"5. Secure easements (if any) deemed necessary by the village engineer before the plat is signed. . . .

"6 (E) Before the plat for said subdivision is signed, said party of the first part shall present to the village engineer of the village of Brown Deer and secure his approval of plans and specifications of the water system which will service said subdivision. That said party of the first part further covenants and agrees for itself, its successors, and assigns that said water system may at the option of the village of Brown Deer be connected to and integrated with any municipal, intermunicipal, or metropolitan water system which may be hereafter established by the village of Brown Deer either alone or in co-operation with other municipalities or any statutory water district. Such connection and integration shall be made without the awarding of any damages or the payment of any sum in consequence thereof by said village of Brown Deer, water district, and/or municipalities.

"7. The restrictions and provisions herein contained shall be deemed to be covenants running with the land and shall be binding on all parties and persons having an interest in the lands affected hereby for a period of twenty-five years from the date this declaration of restrictions is recorded, after which time this declaration of restrictions shall automatically be extended for successive periods of ten years unless an instrument signed by the owners of a majority of the lots in said subdivision has been recorded changing said covenants in whole or in part or reducing the term. However, the village board may relieve the subdivision from such restrictions, or any of them, before the expiration of twenty-five years in the case of substantial hardship by the adoption

of a resolution so doing. The restrictions and covenants herein contained may be enforced by proceedings at law or in equity against any person or persons violating or attempting to violate the same; provided, however, that no action shall be commenced to enforce such restrictions or restrain the violation thereof unless such action is commenced within one year after the completion of the building complained of. Invalidity of any of the covenants or restrictions herein contained declared by any judgment or court order shall in nowise affect any of the other provisions herein contained, which shall remain in full force and effect. The restrictions herein contained may be enforced at law or in equity by the village of Brown Deer, county of Milwaukee, or the owner of any lot within said subdivision."

Portions of the declaration of water trust, which is a part of the plaintiffs' complaint and documented as Exhibit A, follow:

### "Water Trust.

"Declaration of water trust executed by Ash Realty Corporation, dated June 22, 1956, and recorded in the office of the register of deeds for Milwaukee county, Wisconsin, on June 22, 1956, in Vol. 3589 of Deeds at page 300, as document No. 3502232, reciting as follows, to wit:

" 'Know all men by these presents that the undersigned, being the sole owner of the real estate known as "Bradley Estates No. 2 subdivision" located within the southeast one quarter of section 10, township 8 north, range 21 east, Milwaukee county, Wisconsin, in order to provide a water system to service the lots located within said Bradley Estates No. 2 subdivision, has reserved the right to construct wells and install pumping and storage facilities upon certain premises within said Bradley Estates No. 2 subdivision, as more fully appears from the plat of said subdivision on file with the register of deeds for Milwaukee county, and proposes to cause water mains to be constructed to said wells and to install said water mains in the roads or streets located within said subdivision in such a manner as to be available for lateral connections to service all of said lots; and

" 'Whereas it is intended to sell and convey lots within said subdivision to various purchasers upon which homes will be erected, and that the owners of such lots shall have the right to take water from said wells through the mains and laterals above described, subject to the terms and conditions of this trust agreement.

" 'Now, therefore, the undersigned does by these presents hereby give and grant to the trustee hereunder the right to operate and maintain the wells, pumping and storage facilities, and subject to the terms of this trust, hereby conveys to such trustee the easements for wells, pumping and storage facilities, and water mains described above. The undersigned does covenant and agree that each of the lots located within said "Bradley Estates No. 2 subdivision" shall be held and owned subject to the terms and conditions of this trust and that the owners thereof from time to time shall have the right to take water from the water system described above, all on the following terms and conditions, to wit:

" '1. *Beneficiaries:* Each owner of each lot in said subdivision shall become the owner of an undivided interest in and to the well water supply equipment and water mains.

. . .

" '3. *Connection to system:* Each lot owner may connect laterals to the water mains for the purpose of supplying water to such building lot in such manner as may be directed by the trustee, the laying and connecting of such lateral pipes to be at the expense of the owner. After connection with the system, he shall be obligated to make the payments provided in paragraph 4. . . .

" '5. *Other wells prohibited:* No other lot shall be served with water from the said water system, and no owner of any lot above described shall provide or dig any well for supplying water upon any portion of the premises hereinabove described.

" '6. *Rights of Use:*

" '(a) The owner of each lot shall have the right to free and unobstructed access to said water system, subject to the same right as the owners of each of the other lots, to the end that all of said owners may draw water from said system as herein provided. Such water system to be for domestic use only.

"'(b) The village of Brown Deer or any successor municipality having jurisdiction shall have the right to draw water from said system through the fire hydrants provided therefor for fire-fighting purposes in connection with the lots served by the water system without charge to such municipality. . . .

"'16. *Termination:* This trust shall terminate as provided below:

"'(a) The trustee shall transfer the within water system, facilities, and easements to a governmental authority or to a public utility company controlled by the state public service commission (1) at the request of, and upon such terms and conditions as may be approved by the owner or owners of a majority of the properties connected to the system, or (2) upon the issuance of a judicial decree requiring such transfer. The term "transfer" as used herein shall include, but is not limited to, transfer by sale or as the result of condemnation proceedings. Immediately upon such transfer this trust shall terminate.

"'(b) In the event that other adequate water service is provided through means other than the within water supply system and facilities by a governmental authority or public utility company controlled by the state public service commission, this trust shall terminate and the trustee shall dispose of the within water system, facilities, and easements upon such terms and conditions as may be approved by the owner or owners of a majority of the properties connected to the water system.

"'(c) In the event the water system herein provided for, is, in its entirety, at the option of the village of Brown Deer, connected to or integrated with any municipal, intermunicipal, or metropolitan system which may hereafter be established by the village of Brown Deer either alone or in co-operation with other municipalities or any statutory water district, then such connection and integration shall be made without the awarding of any damages or the payment of any sum in consequence thereof by the said village of Brown Deer, water district and/or municipalities and this trust shall thereupon terminate and any cash reserves and proceeds realized from the disposition of assets not required

in connection with such connection and integration shall be distributed to the lot owners as hereinafter provided.

" '(d) Upon termination of this trust, any proceeds from the disposition of the assets of the water system, other than cash reserves, shall be divided proportionately among the then owners of the lots subject to this trust (whether connected to the water system or not) in proportion to the lots owned by such owners.

" '(e) Upon the termination of this trust, any cash reserves shall be divided proportionately among the then owners of the lots improved with dwellings which are connected to the system in proportion to the number of such dwellings owned by such lot owners. . . .

" 'The foregoing shall be construed as covenants running with the land and shall be inserted by reference in all deeds conveying any part of the property described and upon such conveyances shall be deemed to create easements in the land affected thereby, and shall inure to the benefit of the owners and their heirs, executors, administrators, and assigns.' "

The declaration of water trust, dated June 22, 1956, was executed by the Ash Realty Corporation. The trust agreement provided for termination of the trust in its entirety, at the option of the village of Brown Deer in the event the water system is connected to or integrated with any municipal, intermunicipal, or metropolitan system which may hereafter be established by the village of Brown Deer. The agreement further provided that such connection and integration shall be made without the awarding of any damages or the payment of any sum in consequence thereof by the said village. The provisions of the trust agreement, by its terms, were construed as covenants running with the land.

The village of Brown Deer, pursuant to the order of the public service commission, was granted authority to operate as a water public utility on November 8, 1957.

The appellants are each owners of lots by virtue of the respective warranty deeds. The deed by which each appel-

lant and other lot owners in the subdivision acquired their respective titles included the following language: "Subject to easements and restrictions of record . . . and the declaration of trust dated June 22, 1956, . . ."

The original owners of the lands in the subdivision known as Bradley Estates No. 2 were free to subject each lot to the terms and conditions of the water trust and the appellants acquired title with full knowledge of, and subject to, the terms of the water trust. Their interest in the water trust is limited to their rights as beneficiaries as set forth in the trust agreement.

The agreement and declaration of trust complied with the statutory provisions, secs. 236.01, 236.13 (2), 66.60 (3), 231.11, and ch. 232, Stats. 1955, relating to trusts. The water system of the subdivision was and is a public improvement under these statutes. The village had the right to require the dedication thereof, without cost to it, in connection with the approval of the plat and accepting the streets, alleys, or other ways therein which included the water system.

The agreement and water trust constitute a complete dedication of the entire Bradley Estates No. 2 water system to the village of Brown Deer. The beneficiaries under the trust acquired no greater interest in the water system than is contained in the agreement. The trust terminated under its terms when the village exercised its option as a water utility to integrate the Bradley Estates No. 2 water system with that of the village of Brown Deer. The order of the trial court vacating the temporary injunction and granting summary judgment is affirmed without costs.

*By the Court.*—Judgment affirmed.

MARTIN, C. J., took no part.